**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

THADDEUS JAMES THOMAS et al., :
:
Plaintiffs, :
: Civil Action No. 10-1887 (DRD)
v. :
: **MEMORANDUM OPINION**
CHRIS CHRISTIE et al., :
:
Defendants. :

---

**Debevoise**, District Judge:

IT APPEARING THAT:

1. This matter was commenced when Thaddeus James Thomas' ("Thomas"), a pro se plaintiff, filed a civil complaint; that filing resulted in initiation of Civil Action No. 10-1887.[1] Shortly thereafter, another pro se plaintiff, Ronald Nash ("Nash") filed his civil complaint; that filing initiated Civil Action No. 10-2113. Both Thomas and Nash (hereinafter, collectively, "Plaintiffs") were and are individuals involuntarily committed, pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., and they brought their respective actions in forma pauperis.

---

[1] Later on, Thomas filed a supplement to his original complaint submitted in Civil Action No. 10-1887 and, in addition, filed another civil complaint in Civil Action No. 10-5026. This Court examined Thomas's original complaint, his supplement and his complaint filed in Civil Action No. 10-5026 jointly, i.e., when the Court screened all Thomas' submissions for sua sponte dismissal in Civil Action No. 10-1887. Thomas' Civil Action No. 10-5026 was administratively terminated.

2. Thomas' submissions asserted that, on March 17, 2010, Thomas, while being confined at the Special Treatment Unit at Kearney, New Jersey ("Kearney Facility"), attended a community meeting during which he was informed about the then-upcoming transfer of all civilly committed individuals confined at the Kearney Facility, Thomas and Nash included, to the East Jersey State Prison ("EJSP") in Rahway, New Jersey. See Civil Action No. 10-1887, Docket Entry No. 1, at 8.

3. The background of the transfer of Kearney Facility residents was summarized by the Superior Court of New Jersey, Appellate Division, when the state court noted that,

> [p]ursuant to County of Hudson v. State of New Jersey, the State of New Jersey [was] required to turn over the premises of the [Kearny F]acility to the County of Hudson by May 19, 2010. See [County of Hudson v. State Dep't of Corr., 2009 N.J. Super. LEXIS 1188 (N.J. Super. App. Div. May 18, 2009)]. Accordingly, the State [had to] locate another temporary or permanent facility to house the [civilly committed individuals] currently living [in the Kearney Facility].

County of Hudson v. State Dep't of Corr., 2009 N.J. Super. Unpub. LEXIS 1188, at *19 (N.J. Super. Ct. App. Div. Apr. 22, 2009).

4. Thomas' original complaint asserted two lines of claims: (a) one alleging that such transfer, if executed, would subject Thomas to confinement in prison-like conditions, granted that the EJSP was structured and administered as a correctional facility rather than as a treatment unit; and (b) the other line of claims alleging that the transfer would effectively deprive Thomas of an opportunity to have continuos therapeutic treatment necessary for his recovery. Thomas' next submissions notified the Court that Thomas' transfer (same as all Kearney Facility residents' transfer) to the EJSP did, in fact, take place, see Civil Action No. 10-1887, Docket Entry No. 3, and that Thomas' psychiatric

therapy has been, in fact, halted as a result of such transfer. See id., Docket Entry No. 4. Shortly thereafter, Thomas submitted a supplement to his original complaint; the supplement clarified that, although Thomas' mental therapy was swiftly resumed upon his arrival to the EJSP, the extent and frequency of his therapy at the EJSP was substantively lower than that provided to him at the Kearney Facility; Thomas also asserted a slew of other claims.[2] See id., Docket Entry No. 6. Then, on October 1, 2010, the Clerk docketed Thomas' second civil complaint; that complaint asserted that, after his transfer to the EJSP, Thomas was placed in segregated confinement, which completely prevented his access to therapy. See Civil Action No. 10-5026.

5. On October 15, 2010, this Court issued an opinion and accompanying order addressing the claims raised in all Nash and Thomas' pro se submissions. Specifically, the Court dismissed Plaintiffs' claims asserting that their placement in prison-like conditions violated their rights. See Civil Action No. 10-1887, Docket Entry No. 9, at 8-10. Analogously, the Court dismissed Plaintiffs' challenges based on reduction of the time allowed for recreational activities. See id. at 10-12. The Court also dismissed Plaintiffs' claims asserting that, as a result of their transfer to the EJSP, Plaintiffs were prevented from "ordering" personal belongings from outside sources. See id. at 12-15. Finally, the Court dismissed Plaintiffs' access-to-the-courts claims. See id. at 15-17. All these claims were dismissed with prejudice, as facially meritless.

---

[2] Nash's allegations, although less factually developed, similarly suggested reduction in Nash's mental therapy after his arrival to the EJSP and, in addition, repeated many other claims raised in Thomas' submissions. See generally, Civil Action No. 10-2113, Docket Entry No. 1.

6. However, turning to Plaintiffs' claims related to reduction in, or denial of, mental therapy, this Court found that these Plaintiffs' challenges should survive sua sponte dismissal. While Plaintiffs' allegations based on the brief gap in therapy associated with their transfer from the Kearney Facility to the EJSP were facially without merit, see id. at 17, n. 13, the remained of Plaintiffs' reduction-in-or-denial-of-medical-treatment claims appeared plausible within the meaning of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), read by this Court jointly with the holdings of Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987), and related cases. See Civil Action No. 10-1887, Docket Entry No. 9, at 17-21. Therefore, this Court: (a) proceeded Thomas and Nash's medical-treatment-based claims past the sua sponte dismissal stage; (b) directed administrative termination of Nash's Civil Action 10-2113 matter and Nash's designation as Thomas' co-plaintiff in Civil Action 10-1887; (c) directed the Clerk to appoint pro bono counsel to represent both Plaintiffs;[3] and (d) ordered the appointed counsel to file an amended complaint elaborating on their medical-treatment claims. See Civil Action No. 10-1887, Docket Entries Nos. 9, 10 and 11.

7. Plaintiffs' counsel duly filed an amended complaint, see Civil Action No. 10-1887, Docket Entry No. 22, detailing the factual circumstances of Thomas' challenges and greatly elaborating on Nash's previously-scarce allegations. See id. The amended

---

[3] Michael R. Yellin, Esq. ("Mr. Yellin") of Cole, Schotz, Meisel, Forman & Leonard, P.A. was appointed to represent Plaintiffs. See Civil Action No. 10-1887, Docket Entry No. 20.

complaint alleged violations of Plaintiffs' Fourteenth and Eighth Amendment rights,[4] as well as violations of Plaintiffs' rights under the State constitution. See id. The amended complaint named, as Defendants, the following individuals: Christopher J. Christie (the Governor of the State of New Jersey), Paula T. Dow (the Attorney General for the State of New Jersey), Gary M. Lanigan (the Commissioner of the Department of Corrections), Jennifer Velez (the Commissioner of the Department of Human Services), John Main (the Director of the Department of Human Services), Jonathan Poag (the Director of the Division of Mental Health Services), Merrill Main (the Clinical Director of the special treatment units ("STU")), Shantay Braim Adams (the Assistant Director of the STU), Jackie Ottino (the Clinical Director of the STU) and John/Jane Does 1-10 (unspecified individuals).[5]

---

[4] It appears that the reference to the Eighth Amendment made in Plaintiffs' amended complaint was a result of good-faith confusion, since Eighth Amendment protections apply to the inmates confined pursuant to a judgment of conviction, not to pretrial detainees, alien detainees and civilly committed individuals like Thomas and Nash.

[5] In 2001, long before the transfer from the Kearney Facility to the EJSP (and years before many Defendants named in Plaintiffs' amended complaint took office), a civil action was initiated in this District challenging, inter alia, the "overall" level of medical treatment provided to certain Kearney Facility inmates, see Alves v. Ferguson, Civil Action No. 01-0789 ("Alves"); that action was assigned to District Judge Dennis M. Cavanaugh ("Judge Cavanaugh") and Magistrate Judge Mark Falk ("Judge Falk"). During the following few years, a large number of Kearney Facility inmates initiated actions asserting factual predicates and legal issues repeating – or overlapping with – those raised in Alves. This large amount of legal matters was eventually consolidated into the Alves series of cases currently pending before Judges Cavanaugh and Falk. However, neither Thomas nor Nash are among the plaintiffs litigating the Alves series of cases, and – since the Alves series of cases was composed years before the transfer of Kearney Facility inmates to the EJSP – no action in the Alves series of cases asserted, as its factual predicate, the downward change in medical treatment experienced by the inmates upon the transfer, i.e., the Alves series of cases focused on the alleged insufficiency of "normal" level of medical treatment provided to the Kearney Facility inmates, rather than on the *change* from that "old normal" to the "new normal" experienced by Plaintiffs after the transfer.

8. Being served with Plaintiffs' amended complaint, Defendants timely filed a responsive motion, see Civil Action No. 10-1887, Docket Entry No. 31, and, shortly thereafter, filed an amended brief in support of that motion. See id., Docket Entry No. 32. The gist of Defendants' motion could, seemingly, be reduced to two broad categories of statements, with each category breaking, in turn, into two groups of arguments. See id. Specifically, it appears that the first category of Defendants' statements (elaborated upon in Points I and II of their brief) addressed Plaintiffs' claims for monetary damaged based on the downward change in Plaintiffs' medical treatment to the "new normal" experienced by them after their transfer to the EJSP. See id. at 17-21. This category of Defendants' statements builds on the immunities ensuing from the language of the Eleventh Amendment and related aspects of Ashcroft v. Iqbal, 129 S. Ct. 1937, the decision holding, inter alia, that a plaintiff's § 1983 claims based solely on defendants' supervisory capacities are facially insufficient as pled. The second category of Defendants' statements (reflected in Points III and IV of their brief) seemingly address the issue of injunctive relief sought by Plaintiffs and correspond to Plaintiffs' challenges based on the "overall" insufficiency of medical treatment provided to them at both the Kearney Facility and EJSP. See Civil Action 10-1887, Docket Entry No. 32, at 22-29.

9. Specifically, Defendants' Point IV asserts that Plaintiffs' claims seeking injunctive relief in the form of overall improvements to their medical treatment would be addressed most efficiently if these claims were joined with substantially analogous claims litigated in the Alves series of cases. See id. at 26-28. Since this aspect of Defendants' motion is

currently before Magistrate Judge Michael A. Shipp ("Judge Shipp"), it is best left in the able hands of Judges Shipp and Falk.

10. However, Defendants' Point III introduces a peculiar angle to Defendants' position, since this Point III seeks outright dismissal of Plaintiffs' claims asserting overall insufficiency of their medical treatment, i.e., Point III seeks dismissal of the very claims which Defendants simultaneously seek to consolidate with the Alves series of cases.[6]

11. Defendants rely, in their Point III, on the doctrine of abstention articulated in Younger v. Harris, 401 U.S. 37 (1971). The doctrine "espouse[s] a strong federal policy against federal-court interference with *pending* state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (emphasis supplied). "Younger abstention," as the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."[7] Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993). The specific elements of the Younger abstention are: "(1) there are *ongoing* state proceedings that are judicial in nature; (2) the state

---

[6] Specifically, Defendants assert that any civilly committed individual unhappy with the overall level of his/her treatment (or with other conditions of his/her confinement) and seeking to obtain injunctive relief may raise his/her challenges administratively at any time.

[7] For instance, these comity concerns are clearly present when such ongoing state governmental function is a criminal proceeding. See Evans, 959 F.2d at 1234. Correspondingly, federal courts rarely, if ever, entertain § 1983 complaints filed by those individuals who are challenging various aspects of their ongoing state criminal proceedings (e.g., denial of speedy trial); this is so because the state court systems in this nation typically present such forums where criminal defendants enjoy full and ample opportunity to litigate all their federal challenges associated with their criminal prosecution, conviction and sentencing.

proceedings implicate important *state* interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (emphasis supplied).

12. Here, it is true that both Plaintiffs are civilly committed individuals and, pursuant to the relevant state law, they are subject to periodic hearings, as a result of which they might be either released or re-committed. However, no statement made in the amended complaint (or in Plaintiffs' pro se submissions) suggests that Plaintiffs are challenging either the procedural aspects of their commitment hearings or their outcomes; moreover, there is no indication that such commitment proceedings are currently underway with regard to either Thomas or Nash. Therefore, Defendants cannot meet even the first prong of Younger. Moreover, while the state has an important interest in protecting the society by means of prosecuting criminal defendants, civilly committing individuals who are a danger to the society, etc., it is Plaintiffs – rather than the state – who have legitimate interest in obtaining proper medical treatment: the state merely has an obligation, but by no means an important interest, in providing such care. Therefore, Defendants also fail to meet the second prong of Younger. Finally, since there are no ongoing state proceedings where Plaintiffs are challenging their treatment, it is self-evident that Plaintiffs cannot raise their federal challenges in these non-existing proceedings.[8] Consequently, Defendants also

---

[8] Defendants seem to suggest that this Court should abstain from entertaining Plaintiffs' federal claims because Plaintiffs could, theoretically, raise their claims in a state forum by initiating administrative proceedings at any time. However, it is axiomatic that a plaintiff having a claim that might be raised, jurisdictionally, in either state or federal forum cannot be ousted from the federal court by the mere availability of a state court system, that is, unless there is a provision expressly interpreted to operate as a bar to federal claims. For instance, it was held that the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides an

cannot meet the third prong of the <u>Younger</u> abstention. This Court, hence, will presume that Defendants' <u>Younger</u>-based Point III was included in their brief due to their good-faith confusion as to the circumstances where the doctrine might apply.

13. The foregoing analysis effectively leaves this Court with Defendants' two distinct motions fused into Defendants' single Docket Entry No. 32 application: (a) Defendants' request to consolidate Plaintiffs' injunctive relief claims based on the overall insufficiency of "normal" medical treatment of individuals committed under the SVPA with the <u>Alves</u> series of cases; and (b) Defendants' motion to dismiss Plaintiffs' claims against the named Defendants with regard to the challenges asserting liability on the basis of the downward change in medical treatment as a result of Plaintiffs' transfer from the Kearney Facility to the EJSP. Since Plaintiffs' claims challenged by Defendants are based on two qualitatively different factual predicates and seek two entirely different forms of relief, this Court finds it warranted to sever Plaintiffs' injunctive relief claims (analogous, in their nature, to those litigated in the <u>Alves</u> series of cases) from the narrow line of Plaintiffs' challenges raised against the named Defendants and based on the downward change in their medical treatment experienced as a result of their transfer from Kearney Facility to the EJSP. The Court, therefore, will reserve the instant action, <u>i.e.</u>,

---

adequate post-deprivation judicial remedy to persons who believe they were wrongfully deprived of property at the hands of state officials. <u>See</u> <u>Holman v. Hilton</u>, 712 F.2d 854, 857 (3d Cir. 1983); <u>Asquith v. Volunteers of America</u>, 1 F. Supp. 2d 405, 419 (D.N.J. 1998), <u>aff'd</u>, 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available remedy providing all the process which is due, an inmate's due process claim regarding confiscation of property is subject to dismissal with prejudice if it is raised in a federal court under Section 1983. <u>See id.</u> In contrast, constitutional claims alleging undue denials of medical care can be raised in both state and federal forums, and – indeed – a rather substantial share of prisoners' litigation cases filed under § 1983 and fully entertained by federal courts raises exactly this type of challenge.

        Civil Action No. 10-1887, for Plaintiffs' injunctive relief claims sought to be consolidated with the <u>Alves</u> series of cases.[9]  Mr. Yellin's appointment will continue, for the purposes of Civil Action No. 10-1887, until and unless such consolidation is ordered by Judge Shipp.[10]

14.    Defendants' Points I and II will be construed as addressing Plaintiffs' claims against the named Defendants and asserting, as its narrow factual predicate, the downward change in medical treatment experienced by Thomas and Nash upon their transfer from the Kearney Facility to the EJSP.  Correspondingly, these Plaintiffs' claims and Defendants' Points I and II of their motion, seeking dismissal of these claims, will be severed from potentially-consolidated-with-the-<u>Alves</u>-series-of-cases Civil Action No. 10-1887.  Since Thomas already had another matter initiated in connection of his filing of his second <u>pro se</u> complaint, the Court will order the Clerk to reopen Civil Action No. 10-5026 and will reserve it for disposition of Thomas' claims corresponding to Defendants' Points I and II.  Analogously, since Nash already had another matter initiated for him upon his filing of <u>pro se</u> complaint, the Court will order the Clerk to reopen Civil Action No. 10-2113 and will reserve it for disposition of Nash's claims corresponding to Defendants' Points I and

---

    [9]  To the degree Defendants' position seeking dismissal of these injunctive relief challenges on the grounds of the <u>Younger</u> abstention could operate as a bar to such consolidation, this Court's instant determination shall be construed as conclusively removing such bar on the basis of this Court's finding that Defendants' reliance on <u>Younger</u> was misplaced and, hence, Defendants' Point III does not provide a valid ground to grant Defendants' motion.

    [10]  In the event Civil Action No. 10-1887 is consolidated with the <u>Alves</u> series of cases, Mr. Yellin shall seek relief from his appointment from Judge Cavanaugh or Judge Falk, in light of the already-existing <u>pro bono</u> representation of plaintiffs litigating the <u>Alves</u> series of cases.

II; the Court will direct the Clerk to consolidate Civil Actions Nos. 10-2113 and 10-5026.[11]

An appropriate Order accompanied this Memorandum Opinion.

/s/ Dickinson R. Debevoise
**DICKINSON R. DEBEVOISE**
**United States District Judge**

Dated: August 15, 2011

---

[11] Since, as the amended complaint detailed, the factual predicate of Nash's challenges somewhat differs from that underlying Thomas' claims, Plaintiffs' interests appear to be best served if they proceed as plaintiffs in two consolidated matters rather than as joint plaintiffs in the same action. In the event this Court finds that Defendants' motion fails to warrant outright dismissal of Civil Actions Nos. 10-2113 and 10-5026, the Court would consider continuation of Mr. Yellin's appointment and/or appointment of another pro bono counsel to Plaintiffs for the purposes of these actions. However, until and unless Defendants' challenges raised in their Points I and II are resolved in Plaintiffs' favor, the issue of such appointment appears facially premature. Correspondingly, this issue shall be deemed reserved.